UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Cheavon Otto,

Plaintiff,

vs.

Rugged Sole Inc.,

Defendant.

**COMPLAINT**

Plaintiff, CHEAVON OTTO (hereinafter, "Plaintiff"), by and through undersigned counsel, brings this action against Defendant, RUGGED SOLE INC. (hereinafter, "Defendant"), for violations of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, (hereinafter, the "ADA") arising from Defendant's failure to ensure that its e-commerce Website, https://hatchetsupply.com ("Website"), is accessible to blind and visually impaired individuals.

**INTRODUCTION**

1. Plaintiff Cheavon Otto is a legally blind resident of Bronx County, New York. Plaintiff suffers from a visual impairment that substantially limits the major life activity of sight.

2. Because of his permanent and irreversible vision loss, Plaintiff relies exclusively on screen-reader software, including VoiceOver, JAWS, and TalkBack, to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, screen-reader software can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, screen-reader software cannot interpret essential content, rendering the site unusable for blind users.

3. Defendant, RUGGED SOLE INC., on information and belief, owns, operates, and/or controls the commercial retail website https://hatchetsupply.com ("Website"), which markets and sells goods and/or services to consumers nationwide, including New York. The Website functions as an online retail store and a digital gateway to Defendant's goods and services. Defendant is responsible for ensuring that the Website complies with federal, state, and local accessibility laws.

4. Defendant's Website is not a standalone digital platform; rather it is heavily integrated with, and operates as a service of, Defendant's physical retail location 77 Atlantic Avenue, Brooklyn, New York 11201 (hereinafter, the "Subject Premises"). The Website functions as a critical gateway through which customers access the goods and services offered at the Subject Premises, including browsing merchandise, obtaining information regarding products offered for sale, locating physical store locations, and making purchases from Defendant's integrated retail operation. The goods, services, privileges, advantages, and accommodations offered through the Website are closely connected to, and facilitate access to, the goods and services offered at the Subject Premises.

5. Defendant's Website is designed to promote and support Defendant's physical retail location by providing customers with information regarding Defendant's merchandise, retail store, and integrated retail operations. The Website serves as a primary means through which customers learn about, access, and purchase Defendant's goods and services, and is directly connected to the Subject Premises. Through the Website, customers may browse products, locate the retail store, and obtain information regarding the goods and services offered by Defendant at the Subject Premises.

6. Plaintiff visited the Website on multiple occasions, including on or about June 18,

2026, with the intent to browse and purchase Defendant's goods and/or services.

7. During each visit, Plaintiff encountered multiple accessibility barriers that prevented him from identifying products, selecting options, adding items to a cart, or completing a purchase. These barriers are systemic and prevent blind and visually impaired individuals from independently accessing and utilizing the Website's goods and services.

8. Defendant's failure to design, maintain, and operate its Website in a manner accessible to blind and visually impaired consumers denies Plaintiff full and equal enjoyment of Defendant's goods, services, and digital content, in violation of federal, state, and city civil rights laws.

9. Plaintiff's intent to return to the Website is concrete, credible, and ongoing. Plaintiff remains interested in purchasing Defendant's goods and/or services once the Website is accessible. Plaintiff relies on online shopping due to his disability and will return immediately once the Website is accessible to blind and visually impaired individuals.

10. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies, and ensure that the Website is fully accessible to blind and visually impaired consumers.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

12. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367 under the New York State Human Rights Law, Article 15 Executive Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") § 296 *et seq.*

13. Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, accessed the Website from this District, and suffered injury here.

14. Defendant conducts substantial business in this District by marketing and selling goods and services through its Website to New York consumers. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content and fulfilling transactions directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com, Inc*., 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc*., 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc*., 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

15. Accordingly, jurisdiction and venue are proper because Plaintiff accessed the Website within this District and suffered injury here.

16. Defendant's operation of an interactive Website that is integrated with the Subject Premises in New York constitutes the operation of a place of public accommodation and/or a service thereof within this District. The discriminatory barriers encountered by Plaintiff on the Website are directly connected to Plaintiff's ability to access the goods and services offered at Defendant's physical location, thereby establishing a sufficient nexus between the Website and the Subject Premises.

**<u>THE PARTIES</u>**

17. Plaintiff, Cheavon Otto, is a legally blind resident of Bronx County, New York.

Plaintiff relies on screen-reader software to access digital content and complete online transactions and is a qualified individual under the ADA.

18. Defendant, RUGGED SOLE INC., is a domestic business corporation that, on information and belief, owns, operates, and controls the Website.

19. Pursuant to New York Department of State Division of Corporations records, Defendant, RUGGED SOLE INC., filed the Assumed Name "HATCHET OUTDOOR SUPPLY CO" in 2015.

20. Defendant markets, advertises, and sells its goods and/or services directly to New York consumers through its Website and maintains a highly interactive platform that enables consumers to browse products, review descriptions, select options, and complete purchases. The Website includes detailed product pages that present images, descriptions, specifications, and purchasing information to consumers nationwide. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading technology.

21. Defendant continuously conducts business within this District through its Website by offering goods and services to residents and transmitting digital content to users located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

22. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered

multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in a manner that is accessible to blind and visually impaired individuals who rely on screen-reading technology has denied Plaintiff full and equal access to Defendant's goods and services.

23. Defendant's Website is a service of its physical place of public accommodation within the meaning of Title III of the ADA. The Website is not merely informational; rather, it is a fully integrated extension of Defendant's brick-and-mortar operations, through which customers can access, evaluate, and obtain the goods and services offered at the Subject Premises.

24. The inaccessibility of the Website therefore impedes Plaintiff's ability to access the goods and services of Defendant's physical location, including the ability to identify products sold at the Subject Premises, review pricing, and make purchasing decisions prior to visiting or interacting with the physical store.

25. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, researching, and communicating for sighted, blind, and visually impaired individuals alike.

26. Blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

27. Plaintiff is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)–(2), its implementing regulations at 28 C.F.R. §

36.101 *et seq.*, and the NYCHRL. Plaintiff relies on screen-reading software to access the Internet.

28. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users cannot access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent by reading webpage content aloud at a rapid pace. *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

29. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be clicked, which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

30. Industry-recognized accessibility standards exist to assist businesses in ensuring that websites are accessible to individuals with disabilities. Such standards provide guidance regarding the design and operation of accessible digital content.

**STATEMENT OF FACTS**

31. Plaintiff is a legally blind consumer who relies on screen-reader software to navigate websites, read product information, and complete online transactions.

32. Plaintiff visited the Website on or about June 18, 2026, with the intent to browse and purchase a coat for the upcoming winter. Plaintiff learned of the Website as a place where he could shop for outerwear and visited it specifically to find and purchase a winter coat.

33. Plaintiff desired to independently browse Defendant's selection of coats, identify

and compare the available styles, colors, and other product characteristics, and select a coat to purchase.

34. While attempting to browse Defendant's merchandise, Plaintiff encountered accessibility barriers that prevented him from independently identifying and evaluating the products offered. In particular, the product images lacked meaningful descriptions accessible through his screen-reading software. Instead of describing the appearance and characteristics of the merchandise depicted, Plaintiff encountered images identified merely as "image," preventing him from determining what the products looked like and meaningfully comparing the available coats. Plaintiff also experienced difficulty because merchandise was slow to load while he attempted to browse the Website.

35. Plaintiff encountered additional accessibility barriers that interfered with his ability to independently navigate the Website, locate and evaluate merchandise, and complete a purchase. Among other things, Plaintiff encountered inaccessible and confusing navigation submenus, an improperly identified search function with inaccessible search suggestions, unlabeled elements, inaccessible product filtering and Quick View functions, and an inaccessible product recommendation carousel. Plaintiff also encountered barriers affecting the shopping cart and checkout process, including cart updates that were not announced to his screen reader, confusing product-variant information, improperly identified required fields and errors, and an illogically ordered discount and gift-card field. These barriers further impeded Plaintiff's ability to independently browse, select, and purchase Defendant's merchandise.

36. Plaintiff remains interested in purchasing a winter coat from Defendant. Plaintiff strongly desires to return to the Website immediately and going forward to browse Defendant's merchandise, compare available coats, and complete a purchase, but has been, and will continue

to be, denied equal access unless and until the Website is made accessible to individuals with visual disabilities who use screen-reading software.

37. Plaintiff's ability to access the Website and fully benefit from its goods and services is hindered by multiple access barriers and noncompliant digital design practices, including but not limited to the following:

**Website Navigation**

**i. Inaccessible Navigation Submenus.**
The Website's "Shop" and "Explore" navigation links automatically expand their submenus when they receive keyboard focus. Plaintiff is then forced to navigate through every link within the expanded submenu before he can reach the next top-level navigation item, regardless of whether he intends to access the submenu. As a result, Plaintiff cannot bypass unwanted submenu content and must navigate through unnecessary links and announcements each time these navigation items receive focus, substantially interfering with his ability to efficiently navigate the Website using his screen reader and keyboard.

**Search**

**ii. Inaccessible Search Function.**
The Website's search control is announced to Plaintiff's screen reader as a "search link," even though activating the control opens a search pop-up rather than navigating to another page or section. The search pop-up is not announced when it opens, and search suggestions that automatically appear as Plaintiff types are likewise not announced or accompanied by instructions explaining how to access them. As a result, Plaintiff cannot determine that he is interacting with a search pop-up, identify the available search suggestions, or independently use those suggestions to search for Defendant's products.

**Website Header**

**iii. Unlabeled Elements in Website Header.**
The Website's header contains multiple elements that lack meaningful labels identifying their purpose or functionality. When Plaintiff navigates past the cart link using his screen reader and keyboard, these elements are announced merely as "clickable," "blank," and "blank," without any information explaining what the elements are or what actions they perform. As a result, Plaintiff cannot determine the purpose or functionality of these elements or independently determine whether they provide access to Website content or features.

**Product Browsing**

**iv. Inaccessible Quick View Feature.**

Product cards displayed on the Website's collection pages contain a "Quick View" button that allows customers to make product selections and add merchandise to their carts without leaving the collection page. The "Quick View" button does not receive keyboard focus and is skipped during keyboard navigation. As a result, Plaintiff cannot determine that the Quick View feature is available or independently open and use it to review product options, make selections, or add merchandise to his cart.

**v. Inaccessible Product Filters.**
The Website's product filtering controls are not properly identified to Plaintiff's screen reader. Filter options appearing under categories such as "Brand" and "Product Type" are not announced as checkboxes or other interactive controls and instead are announced as blank elements without meaningful labels or roles. As a result, Plaintiff cannot determine that the filter options are interactive or independently use them to narrow and browse Defendant's available products.

**vi. Inaccessible "You May Also Like" Product Carousel.**
The Website's "You May Also Like" carousel does not provide Plaintiff with an accessible means of navigating and selecting the products presented within it. When Plaintiff's focus enters the carousel, his screen reader announces the contents of all carousel slides at once, including navigation controls, product names, prices, product variants, and add-to-cart controls, without meaningful structure or information identifying Plaintiff's position within the carousel. The lengthy and unstructured announcement prevents Plaintiff from independently identifying individual products, understanding the organization of the carousel, navigating between products, or making product selections.

**vii. Inaccessible Store Information Pop-Up.**
The Website's "View Store Information" control is announced to Plaintiff as a same-page link even though activating it opens a pop-up. The Website does not announce that the pop-up has opened and instead causes all of its contents to be announced immediately and without meaningful structure. When Plaintiff subsequently navigates within the pop-up, his screen reader announces a "close cart button," even though he is interacting with store information rather than the shopping cart. As a result, Plaintiff cannot reliably determine what content he is interacting with, where he is positioned within the Website, or how to independently navigate and close the store information feature.

<u>**Shopping Cart**</u>

**viii. Cart Subtotal Changes Are Not Announced.**
When Plaintiff changes the quantity of an item or removes merchandise from his shopping cart, the Website visually updates the cart subtotal but does not announce the updated amount to his screen reader. As a result, Plaintiff cannot independently determine the current cost of the merchandise in his cart after making changes and must navigate through the cart to locate the updated subtotal.

**ix. Non-Interactive Product Information Improperly Receives Keyboard Focus.**
Product cards within the shopping cart display selected product information, such as size

or color, as plain text that nevertheless receives keyboard focus. When Plaintiff encounters this information, his screen reader provides no indication of its role or whether it is interactive, and attempting to activate the focused text produces no response because it is not an interactive control. As a result, Plaintiff cannot determine why the product information has received focus or whether he is expected to interact with it, causing unnecessary and confusing stops while navigating his shopping cart.

**Contact Form**

**x. Inaccessible Required Fields and Error Identification.**
The Website's contact form does not provide Plaintiff with accessible information identifying which fields are required before he attempts to submit the form. If Plaintiff submits the form without completing a required field, the page refreshes and an error is announced, but his keyboard focus is not moved to the field containing the error or another location that permits him to readily identify and correct it. As a result, Plaintiff cannot determine in advance which fields must be completed and, following an unsuccessful submission, must navigate backward through the page to locate and correct the field containing the error.

**Checkout**

**xi. Inaccessible Discount and Gift Card Field.**
The Website's checkout page places the discount and gift card field after the contact, delivery, and payment fields and after the "Pay Now" button in the keyboard tab order. Because the primary control for completing the purchase is encountered before the discount and gift card field, Plaintiff has no reasonable indication that an additional field remains available after the "Pay Now" button. As a result, Plaintiff may complete the checkout process without discovering the field and is prevented from independently applying an available discount or gift card to his purchase.

38. As a direct result of these barriers, Plaintiff was unable to identify products, select options, add items to a cart, and complete a purchase. His exclusion was real, immediate, and directly caused by Defendant's failure to implement basic, industry-standard accessibility practices on the very pages offering the goods and/or services she needed.

39. Defendant's Website is directly integrated with its physical location and serves as a primary means by which customers access the goods and services offered at the Subject Premises. Through the Website, Defendant provides detailed product listings, descriptions, pricing, and promotional information for products offered through Defendant's integrated retail operation, and

enables customers to identify, evaluate, and select merchandise prior to visiting the Subject Premises.

40. Plaintiff's attempts to access the Website were made in connection with his intent to obtain goods and/or services from Defendant's physical location. Plaintiff sought to use the Website to identify suitable products, review available options, and facilitate a transaction tied to Defendant's brick-and-mortar operations.

41. The accessibility barriers encountered by Plaintiff on the Website prevented his from accessing critical information necessary to utilize the goods and services offered at the Subject Premises, including the ability to identify products sold at Defendant's physical location(s), confirm available options, and make informed purchasing decisions.

42. As a result of these barriers, Plaintiff was effectively denied access not only to the Website, but also to the goods and services of the Subject Premises, as the Website functions as a gateway to those goods and services.

43. Defendant's Website is not a passive marketing tool; it is a fully interactive platform central to its business model. Through the Website, Defendant markets and sells goods and services nationwide, including to New York residents.

44. Defendant has failed to implement readily available accessibility measures necessary to ensure that blind and visually impaired individuals can access and utilize the Website.

45. Plaintiff's intent to return to the Website is concrete and ongoing. Plaintiff remains interested in purchasing Defendant's goods and/or services once the Website is accessible.

46. Plaintiff's need for accessible online shopping is permanent and ongoing due to his disability.

47. Defendant's failure to make the Website accessible denies Plaintiff full and equal

enjoyment of its goods and services.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

48. Plaintiff restates Paragraphs 1-47 as though fully set forth herein.

49. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

50. Defendant owns, leases, or operates a place of public accommodation.

51. Defendant's Website is a service of a place of public accommodation and is heavily integrated with Defendant's physical location. Accordingly, the Website must be accessible to blind and visually impaired individuals on equal terms.

52. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

53. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

- A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such

goods, services, facilities, privileges, advantages or accommodations; and

- A failure to take such steps may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

54. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing.

55. Defendant has denied Plaintiff full and equal access to its goods and services.

56. Defendant has failed to provide auxiliary aids and services necessary for accessibility.

57. Defendant's conduct violates the ADA.

58. Plaintiff is entitled to injunctive relief.

**SECOND CAUSE OF ACTION**
**(Violation of NYSHRL)**

59. Plaintiff restates Paragraphs 1-47 as though fully set forth herein.

60. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law § 290 *et seq.*, covers the actions of the Defendant.

61. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

62. Defendant, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

63. Plaintiff has visited the Website on multiple occasions and has encountered accessibility barriers that deny his full and equal access.

64. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

65. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

66. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use

of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

67. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

68. Established accessibility standards and testing methodologies exist to assist businesses in providing accessible websites for individuals with disabilities. Defendant failed to implement such accessibility measures despite the widespread availability of accessibility guidance and tools.

69. Defendant has intentionally and willfully discriminated against the Plaintiff in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

70. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff, causing irreparable harm.

71. Plaintiff is therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of NYCHRL)**

72. Plaintiff restates Paragraphs 1-47 as though fully set forth herein.

73. N.Y.C. Administrative Code ("NYCHRL") § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of any person's . . . disability . . . directly or indirectly to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

74. Defendant is subject to NYCHRL because it owns and operates the Website making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

75. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therewith to be inaccessible to blind individuals. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

76. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of § 8-107 *et seq.* from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the

disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

77. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

78. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

79. Defendant's actions violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

80. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

81. Plaintiff is also entitled to reasonable attorneys' fees and costs.

82. Under N.Y.C. Administrative Code §§ 8-120 and 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff seeks judgment as set forth below.

**FOURTH CAUSE OF ACTION**
**(Declaratory Relief)**

83. Plaintiff restates Paragraphs 1-47 as though fully set forth herein.

84. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities

of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

85. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

1. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

2. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully accessible to blind and visually impaired individuals;

3. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

4. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff for violations of civil rights under New York City Human Rights Law and the New York State Human Rights Law;

5. Pre-judgment and post-judgment interest;

6. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

7. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Jennifer E. Tucek, Esq.*
Law Office of Jennifer Tucek, PC
Bar No. JT2817
641 Lexington Avenue, 15th Floor
New York, New York 10017
(917) 669-6991
TucekLaw@Gmail.com
*Attorney for Plaintiff*